Upon the plaintiff’s application for the required order of this court, two questions are presented:
First. Shall the bond, in order to “make full restitution” in ease of reversal, provide for interest on the amount defendant is now required to pay plaintiff ?
Second. Shall this court make the.order on a bond with personal sureties, despite the provision of the act of April 20, 1904, known as the “Crafts Law” (97 O. L., 182), which required such bond to be given by a surety company.
As to the first proposition, I am of opinion that whether by specific words used or not, the requirements of Section 6722, that in case of a reversal of the judgment, “full restitution” must be made to the defendant, carries with it a liability on the bond to pay back not only the original amount of the judgment, but the legal rate of interest of six per cent, during the time of such detention of the money. In case of a reversal of the judgment, no authority for detaining and holding the fund exists, nor can the original judgment which shall have been annulled be pleaded as a surety for plaintiff’s use of defendant’s money. The very proposition that if a stay be given by a defendant pending error proceedings, he must on final affirmance pay plaintiff not only the original amount of the judgment, but also six per cent, interest from the date of its rendition, carries with it its own converse, that if the defendant be required to play plaintiff the amount of a judgment afterwards annulled the same rule should apply.
Moreover, abuse can easily be conceived, that a plaintiff having, as it may afterwards be decided, no valid claim at all, should be able to place the money out at interest during the time of error proceedings, retaining the interest and restore plaintiff only the principal sum. That the defendant in such ' case is entitled to have a return not only of the money paid him, but the usual six per cent, interest, I deem only just and .in accordance with the full spirit of our law in all other similar cases.
*407 The second proposition questions the validity and constitutionality of a part of the act above mentioned. That portion of the act challenged provides that “in all cases in which any bond, recognizance or undertaking is * * * required or permitted by law or ordinance # # * the execution of the •same shall be sufficient by a company or companies authorized by the laws of this state to guaranty the fidelity of persons” * * * etc., and the execution or guaranteeing as surety of all bonds [except certain bonds not over $2,000] is hereby required to be by such company or companies.
A provision is further made granting to any person the right to give a personal- bond on his -filing an affidavit of the refusal of any such company to bond him or failure of such surety bond to receive approval. Other provisions provide for the payment -of a premium each year and need not be quoted here in full.
The change from the old section, therefore, consists in this, that where the old law granted a most wholesome and commendable right and privilege to offer such a company as surety at the option of a principal, this amended act under consideration here denies this option and makes such a bond imperative and exclusive. The first impression which must arise upon a consideration, therefore, of this act is that, irrespective of the purpose and object of the act, the effect of it is to confer a financial boon to a favored class.
If the right to give bond be purely the creature of the Legislature, it may be most strongly argued that its limitation properly rests with that body, and no complaint could be made as to any limitation the Legislature desired to make with reference thereto. In so far as the giving of a recognizance in criminal cases is concerned, we have the express provision of the Bill of Rights which provides that “All persons shall be bailable by sufficient sureties,” etc. It should not require much argument to satisfy one that the term “sureties” as used over fifty years ago in our present Constitution, and as understood 'in the decisions of this state quoting the term, means “persons signing as surety.” And it likewise.follows that the Constitution having given the right of bail upon giving sufficient sureties, it is denied to the Legislature to limit that right or curtail it'iff *408 the slightest degree by declaring insufficient that which was then and under its plain meaning still is insufficient. To grant such right would permit the Legislature to so far curtail the sufficiency of sureties as to seriously impair the right. And it was to prevent any abuse or curtailment of this right to bail that the Seventh Article of Amendment to the Constitution of the United States was passed, forbidding excessive bail. It must be evident, therefore, that in so far as this act would attempt to substitute a surety company in cases of criminal recognizances, the Constitution itself forbids.
Passing now to the civil bonds included in this act, I do not find it necessary to consider the rights of citizens to give bonds in the various departments, or conditions of trust capacity. The right to give bond has not been directly curtailed since bonds under this act may be given and used in exactly every case heretofore known and provided. The defect, therefore, if any, lies in the curtailment of the authority and the requirement that a specific class only shall so act. The following observations upon the law suggest themselves:
(1) . It denies to the person giving a bond for $2,100 the rights, opportunities and privileges accorded to him giving bond in the sum of $2,000.
(2) . It confers upon a “company” (i. e., corporation organized under Tit. II, Ch. II, R. S. O.) an exclusive right to receive the benefits (i. e., money remuneration) from the bonds so required to be given in this state.
(3) . It recognizes the perfect fitness, suitability and sufficiency of personal sureties, but forbids any resort to them until at first the favored company had been solicited and had an opportunity to act.
(4) . It requires one to pay a fixed and certain price to a limited and designated class for a surety risk, and forbids such a one to make better or different terms with any other person or class of equal or even higher sufficiency.
(5) . Opportunity for the creation of large trust funds of property for a long term of years is seriously restrained and encumbered by the requirement of a substantial payment of fees each year out of the property itself.
*409 (6) . This restraint and encumbrance upon property is not for a common purpose or benefit, but for special favor.
(7) . Whatever the object of the law, its result plainly is this: That it adds and contributes nothing to the subject of bond giving, and therefore nothing to the general welfare or common benefit or common burden, but does give a limited class an exclusive favor and right to have the usufruct of fees. The operation of the act is so limited that it accomplishes this last purpose alone and nothing' else. With the function of government expressly declared as having been instituted for the equal benefit of its people by Section 11 of the Bill of Rights, it requires no new construction of that instrument to say that legislation for any private gain or benefit is in full spirit and letter forbidden. The ease at bar does not belong to that class of cases where, as merely incidental or essential to the accomplishment of objects of public welfare, special privileges and benefits are necessarily given at public expense, and it requires no difficulty to distinguish between them.
The inviolability of private property guaranteed by Section 19 of Article I of the Ohio Constitution, protects that property from indirect as well as from direct and open amercement except for public welfare. Where the effect as well as manifest purpose of .the act is to place a burden on private property in order that the fruits thereof may go to a favored class, and in the absence of any involvement of public welfare, the protection of Section 19 may be invoked. Moreover, if we grant that this subject of bond giving concerns the public welfare and that therefore is of such a character as to permit of legislative restraints and legislation, nevertheless such restraints must be reasonable and not for private purpose, gain or favoritism (State v. Gerdner, 58 O. S., 599).
And giving to the act in question that presumption which all legislation should receive at the hands of the court, in favor of the constitutionality thereof, as well as the presumption of good and proper.motive, nevertheless a restraining statute “must be of such a character that a court may see that it is for such general welfare, protection and benefit. The judgment of the Gen *410 ■eral Assembly in such cases is not conclusive” (Palmer v. Tingle, 55 O. S., 423).
The act as it stood prior to this amendment was, as I have before said, wholesome and commendable. It took nothing away but added to the possibility of suretyship. It gave us all we had before, to-wit, personal suretyship, and added the additional possibility guaranty company suretyship. This form of surety-ship is often desired by principal to avoid personal obligation which might arise to sureties. Individual sureties may occasionally become insolvent or a single loss may utterly ruin an individual surety. Many other good reasons in favor of the privilege of using surety companies might be advanced and the constitutionality of an act permitting payment to such company for such service is sustained (In Re Clarke’s Estate, 195 Pa. St., 520).
In this last named case the court remarks as a point in favor -of the constitutionality of the law that the act bars no one, but merely gives an incidental advantage by way of the payment of fee to what the Legislature held to be a better form of ■security.
It must be conceded that if the business of suretyship were ■one involving supervision under police regulations, any reasonable restriction as to those who might so act, and the qualifications necessary, however stringent, become proper subjects of legislation. This doctrine of regulation under the police power, has been carried to almost every form of business and limits of restriction. Indeed where the regulation is difficult to accomplish, the entire prohibition of a legitimate business has been •sustained under this doctrine. But the test is whether the restriction or discrimination is in fact regulation or whether it is favoritism under that guise. In the latter ease, the duty of the court is clear, and it should, without hesitation, declare such legislation unconstitutional. As to this subject of suretyship, no reason appears for extending regulation to the point of actual abolishment of personal sureties. And the most potent reason ■of all for thus concluding lies in the fact that the act itself recognizes personal sureties as perfectly good and sufficient, that ■ *411 kindly privilege being withheld, however, until the favored company has had first chance.
F. S. Monneit, for plaintiff.
J. E. Todd, for defendant.
This motion has arisen so unexpectedly that I have been without the benefit of argument of counsel, but I can see that a number of questions might arise not pertinent here. For instance, it might be argued that in so far as the state acting through its Legislature may desire, it may prescribe what shall be sufficient to satisfy it as a surety, and therefore, as to certain state officials, such restriction might be sustained. But these other questions need not, however, be discussed here.
For the reason, therefore, that the fundamental principles of our government, as expressly declared in the Constitution, prohibits legislation of this character, I hold the requirements and provisions of the act in question to be unconstitutional and a bond will be accepted in this case with personal sureties.